JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant Ohio Patrolmen's Benevolent Association ("OPBA") appeals from the decision of the Cuyahoga County Court of Common Pleas that denied OPBA's motion for an order to show cause or be held in contempt for disobedience of prior order and for attorney fees. For the reasons discussed below, we affirm the trial court's decision.
 {¶ 2} The following facts give rise to this appeal. OPBA is the exclusive bargaining representative for corrections officers employed by the Cuyahoga County Sheriff ("Sheriff") at the Justice Center. On August 27, 1996, a grievance was filed on behalf of the third-shift correction officers. The grievance alleged that the Sheriff was violating the labor agreement and creating a security risk by "assigning one officer to two separate posts at the same time, on a regular basis."
 {¶ 3} The grievance was submitted to binding arbitration, and the arbitrator found that the practice of double pod assignments on the third shift created "an unsafe working condition for Corrections Officers." This decision was based upon evidence which revealed that an officer on the third shift who was assigned to cover two pods was required to oversee approximately 96 prisoners in two separate areas in the jail. The arbitrator's award provided as follows:
 {¶ 4} "Based upon the evidence received in this matter, the undersigned Arbitrator orders the cessation of the practice of double pod assignments for Officers assigned to the third shift as soon as possible after the receipt of this decision."
 {¶ 5} Upon application of OPBA, the trial court confirmed the arbitrator's award. The Sheriff appealed the trial court's decision and this court affirmed that decision. Thereafter, this court denied a motion for reconsideration and the Ohio Supreme Court declined jurisdiction.
 {¶ 6} On March 10, 2000, OPBA filed a motion requesting that the Sheriff either show cause or be held in contempt for disobedience of prior order and included a request for attorney's fees. OPBA asserted that the Sheriff had failed to comply with the prohibition against double pod assignments in violation of the trial court's order. The trial court denied the motion to show cause; however, this court reversed the order and remanded the case for a hearing. A hearing was held on October 10, 2002, and the trial court issued a decision denying OPBA's motion to show cause on November 29, 2002. The trial court found that substantial changes made in staffing procedures during the last five years had eliminated the double pod assignments and that the Sheriff was in full compliance with the arbitrator's ruling that was confirmed by the court. The trial court further found that OPBA had failed to prove by clear and convincing evidence that the Sheriff was in contempt.
 {¶ 7} OPBA filed a timely appeal to this court raising one assignment of error.
 {¶ 8} "The trial court erred to the prejudice of appellant by denying appellant's motion for an order to show cause or be held in contempt for disobedience of prior order and for attorney fees."
 {¶ 9} Contempt is the disobedience of a lawful court order.Windham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. A finding of civil contempt can only be made upon clear and convincing evidence. Tradesmen Int'l v. Kahoe (Mar. 16, 2000), Cuyahoga App. No. 74420. A trial court's finding of civil contempt will not be reversed on appeal absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary, or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 10} OPBA claims that the trial court substituted its judgment for that of the arbitrator by examining the merits of the arbitration award and concluding that the corrections officers' assignments do not constitute double podding. We recognize that a trial court may not review the merits of an arbitration award and can only vacate or modify the award when it is established that the award is defective in a manner recognized by R.C. Chapter 2711. Cleveland Police Patrolmen's Ass'n v.City of Cleveland (Feb. 24, 2000), Cuyahoga App. No. 75839. However, in this case, the trial court was not reviewing the arbitration award; rather, the court reviewed the evidence to determine whether the Sheriff was in compliance with the arbitrator's ruling.
 {¶ 11} In contrast to a review of an arbitration award, a motion to show cause is essentially a new and independent proceeding. ErieCounty Sheriff v. FOP, Erie App. No. E-01-042, 2002-Ohio-3991. By its very nature, a contempt proceeding requires evidence of a party's actions subsequent to the entry of the order sought to be enforced. Id. In determining whether a party is in civil contempt, a trial court may consider any evidence that it finds relevant to determining whether that party properly complied with the court's orders. Id.
 {¶ 12} In this case, the trial court properly evaluated the evidence to determine whether the Sheriff had violated the arbitration award. The evidence presented at the contempt hearing established that considerable staffing changes have been made since the arbitration award.
 {¶ 13} Robert Pace, a corrections consultant and the former jail administrator, testified that following the arbitration award, the jail supervision on the third shift was changed from 1 officer for 96 prisoners to 1 officer for 48 prisoners. He also testified that a red zone project was implemented which increased the supervision and security within the facility, changed the way staff was assigned and inmates were supervised, and created an emergency response team. Also, a team approach was established where in some areas two regular officers and a relief officer may be assigned to watch four pods, or six officers may be assigned to watch eight pods. This approach was implemented to eliminate the double pod assignments that were in place before the arbitration. In this regard, Pace testified that under the red zone, at no time is one officer assigned to watch two pods.
 {¶ 14} Kenneth Kochevar, the current jail administrator, also testified about the added security provided by the red zone project and the special response team. Kochevar added that the minimum staffing pattern that had included double podding had been eliminated and that the practice of double podding no longer exists anywhere in jail I or jail II.
 {¶ 15} OPBA presented testimony from Joseph Kushner, a third-shift corrections officer assigned to the ninth floor of jail II. Kushner testified that he is assigned to a J-station control panel and that there is one J-station per pod, which generally contains 48 prisoners. Kushner testified that when there is a half-hour lunch break, there is only one correction officer for two pods. However, Kushner admitted that the prisoners are in lock down during lunch time.
 {¶ 16} OPBA also presented testimony from James Clay, a third-shift corrections officer who worked on the eighth floor of jail I during the summer. Clay testified that he supervised two of the eight pods, but that six officers were assigned to the floor. Other evidence indicated that three officers were assigned to each end of the floor with four pods on each side.
 {¶ 17} OPBA contends that regardless of whether one officer is assigned to two pods, or two or three officers are assigned to four pods, double podding exists. The trial court recognized the issue as "whether 6 CO's for 8 pods constitutes `double podding' or somewhere between double and single podding. The arbitrator did not have this staffing pattern to consider."
 {¶ 18} The trial court proceeded to evaluate the staffing patterns on various floors in both jail buildings and determined that double pod assignments had been eliminated. The trial court also determined that the complaint concerning lunch break relief was not dealt with by the arbitrator and was the same policy used in the day shifts for which the arbitrator found the standards for safety and health had been met.
 {¶ 19} As a result of our review of the record, we find that the trial court did not abuse its discretion in finding OPBA failed to prove that the present staffing in the jail constitutes the double podding prohibited by the arbitrator's decision. The arbitrator's decision prohibited the practice of double pod assignments on the third shift, which as presented in the grievance was the practice of "assigning one officer to two separate posts at the same time, on a regular basis." The evidence before the trial court reflected significant staffing changes and added security measures which eliminated the practice of double podding. As Pace and Kochevar both testified, and the facts clearly establish, there is no longer one officer assigned to two pods at the same time and on a regular basis in either jail.
 {¶ 20} OPBA's sole assignment of error is overruled.
Judgment affirmed.
DIANE KARPINSKI, P.J., and TIMOTHY E. McMONAGLE, J., concur.